

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

July 21, 2022

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Tyler Forbes
      Criminal Docket No. 22-97 (LDH)

Dear Judge Kovner:

  The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, scheduled for June 28, 2022 at 1:00 p.m., with respect to the defendant Tyler Forbes. The United States has reviewed the Presentence Investigation Report (PSR) prepared in this case and does not dispute any of the facts or factors set out therein. For the reasons set forth below, the government respectfully submits that a sentence consisting of (1) a term of imprisonment at the Court's discretion, based on the factors set forth at 18 U.S.C. § 3553(a), and a (2) a one-year term of supervised release would be sufficient but not greater than necessary to accomplish the aims of sentencing.

I. The Offense Conduct and Procedural Background

  On April 14, 2022, the defendant was charged in a single-count Criminal Information filed in the Eastern District of New York, and the defendant pled guilty before the Honorable U.S. Magistrate Judge Lois Bloom. *See* ECF No. 8; PSR ¶ 1. The Criminal Information charged the defendant with manipulation of security prices, in violation of 15 U.S.C. §§ 78i(a)(2) and 78ff. *See* ECF No. 5; PSR at ¶ 2. Sentencing is currently set for July 28, 2022.

  The defendant's plea of guilty was predicated on the defendant engaging in an unlawful "spoofing" strategy while employed as a trader on the U.S. Treasuries desk in New York, New York, of a global financial institution. PSR ¶ 6-7. Between approximately January 2019 and June 2019, the defendant employed a strategy to manipulate the price of U.S. Treasury securities—predominantly 2- and 3-year U.S. Treasury notes, but sometimes also 10-year U.S. Treasury notes—and to deceive other traders in the market. *Id.* Forbes' spoofing strategy involved electronically placing large, non-bona fide orders that he intended to cancel prior to execution on one side of the market ("Spoof Orders"), while simultaneously entering smaller, bona fide orders that he intended to execute on the opposite side of the market ("Genuine

Orders"). *Id.* ¶ 7. The purpose of the Spoof Orders was to create a false appearance of market depth and activity in order to mislead other traders and artificially raise or depress the prevailing market price so that Forbes could execute his Genuine Orders more easily or more profitably; after executing his Genuine Orders, Forbes attempted to, and frequently did, cancel his Spoof Orders. *Id.* ¶ 8

II. The Guidelines Calculation

On April 14, 2022, Forbes signed a plea agreement to plead guilty to one count of manipulation of security prices, in violation of 15 U.S.C. §§ 78i(a)(2) and 78ff. As part of the written plea agreement between the Government and the defendant, the parties stipulate that the following Guidelines provisions apply in this case:

1. The base offense level is a 7, *see* USSG § 2B1.1(a)(1); and

2. The loss amount is more than $250,000 but less than $550,000, and consequently, the offense level is increased by 12 levels, *see* USSG § 2B1.1(b)(1)(G);

The Government and the U.S. Probation office both agree that the following enhancement applies:

3. Because the offense involved a violation of securities law and the defendant was associated with a registered broker or dealer,[1] the offense level is increased by four, *see* USSG § 2B1.1(b)(20)(A)(ii).

The Government believes the four-point "broker-dealer" enhancement applies based on the plain language of the Guidelines provision, and specifically here that: (1) the defendant was employed as a trader by a broker-dealer during his conduct and was thus "a person associated with a broker-dealer"; and (2) his offense conduct—manipulation of security prices—plainly involved a violation of securities laws. *See* USSG § 2B1.1(b)(20)(A)(ii); *see e.g., United States v. Kelly,* 305 F. App'x 705, 709 (2d Cir. 2009) (finding the enhancement applied even though the defendant was not a broker, noting that the defendant "held a variety of securities licenses at the time he committed the offenses, that [he] was both a managing executive and a registered representative of [a broker-dealer], and that he was a registered stockbroker with the NASD"); *United States v. Emmenegger,* 329 F. Supp. 2d 416 (SDNY 2004) (finding the enhancement properly applied to a trading assistant employed by a registered broker-dealer, and

---

[1] Application Note 16, directs that the term "Person associated with a broker dealer" be given the same meaning as the term under 15 U.S.C. § 78c(a)(18): "any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, *or any employee of such broker or dealer,* except that any person associated with a broker or dealer whose functions are solely clerical or ministerial shall not be included in the meaning of such term for purposes of section 78o(b) of this title (other than paragraph (6) thereof)." *See* 15 U.S.C. § 78c(a)(18) (emphasis added).

2

that the "clerical or ministerial" carveout under 15 U.S.C. § 78c(a)(18) was not relevant to determining the scope of the broker-dealer enhancement).

As such, the government believes the Guidelines were properly calculated, as set forth in paragraphs 16 through 27 of the PSR:

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 7 |
| Plus: Loss More than $250,000 (§ 2B1.1(b)(1)(G)) | +12 |
| Plus: Abuse of Trust/Special Skill (§ 2B1.1(b)(20)(A)(ii) | +4 |
| Minus: Acceptance of Responsibility (§ 3E1.1(a) and (b)) | -3 |
| Total: | 20 |

Accordingly, based upon a total offense level of 20 and a criminal history category of I, the advisory Guidelines range is between 33 to 41 months' imprisonment.

The Government disagrees that a downward departure pursuant to Note 21(C) of Guidelines § 2B1.1 is warranted here given that the offense level does not "substantially overstate the seriousness of the offense." The defendant's offense conduct was serious and the Guidelines appropriately reflect that: spoofing is deceptive market manipulation that threatens the integrity of the financial markets and erodes investor confidence. Further, a single instance of spoofing is a crime, and here the defendant engaged in months of spoofing activity. Indeed, the Government would point the Court to Guidelines § 2B1.1 Application Note 21(A)(iv), which states that an upward departure may be appropriate where "[t]he offense created a risk of substantial loss beyond the loss determined for purposes of subsection (b)(1), such as a risk of a significant disruption of a national financial market." While the Government is not arguing for such an upward departure here, this other subsection within the same Application Note at the very least negates the appropriateness the requested downward departure. Manipulative activity and eroded confidence in the U.S. Treasuries markets, viewed as a cornerstone of the domestic and international economy and a safe and secure investment, arguably increases the risk of a significant disruption of that market.

The government recommends that the Court impose a sentence of incarceration consistent with the factors under Section 3553(a), including the need to avoid unwarranted sentencing disparities.

III. Government's Sentencing Position Under the 3553(a) Factors

After the Court has properly calculated the Guidelines range and ruled upon all departure motions, the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). The government respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

1. <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of the defendant's offenses are serious and merit a serious sentence. For at least four months in 2019, the defendant engaged in a spoofing scheme during which he engaged in manipulative trading activity that affected numerous other market participants, and who were deceived into trading at disadvantageous prices. By placing large Spoof Orders that he had no intention of fulfilling, he pushed the market price in the direction of his advantage to help ensure his Genuine Orders were filled—to the detriment of others and to the benefit of his employer. Conduct such as the defendant's "threaten[s] the integrity of the markets on which the spoofing occurred, and the integrity of markets is a core component of our economy." *United States v. Vorley,* Case No. 18-cr-35-1, Sentencing Tr. at 60 (N.D. Ill. June 21, 2021) (sentencing hearing transcript). Further, such conduct "has ramifications beyond the markets themselves because so much of our economic welfare depends on financial markets and their fair and efficient functioning[, and w]hen people don't have confidence in the reliability of those market, the economy suffers tremendously…" *Id.* at 60-61; *see also United States v. Zhao*, No. 18-cr-24, Sentencing Tr. at 28 (N.D. Ill. Feb. 4, 2020) (stating this type of offense "threatens the integrity of the financial markets because it prompts people to question the lawfulness of the conduct and the good faith of the participants that operate the financial system and perpetuate the kind of thought process that says this system is rigged. It's rigged in favor of insiders and people who know how to manipulate it").

Moreover, although the defendant argues that he did not receive financial or direct personal benefits from the spoofing, he was ultimately acting in his own self-interest. The defendant's career success and reputation were undoubtedly tied to his performance, as was his bonus. Although the defendant may have felt pressure to perform, and was aiming to please his employer, it was ultimately his choice to cut corners at the expense of other market participants, and he did so out of his own self-interest. And not just once—he engaged in this manipulative conduct numerous times over the course of four months. His choice was wrong, the conduct was inexcusable, and the defendant should be held accountable for his actions. As such, the nature and circumstances of the offense conduct weighs in favor of a significant sentence.

2. <u>The History and Characteristics of the Defendant</u>

There are factors in the defendant's history and characteristics that support a higher sentence, as well as mitigating factors that militate toward a lighter sentence. Although the defendant was quick to take responsibility for his crime, he nonetheless came clean only after his criminal conduct was discovered. Also, unlike many of the defendants who appear before this Court to answer for their crimes, the defendant enjoyed many opportunities and advantages in life. The defendant reports a normal childhood free of any hardship, financial or otherwise, and was raised in a supportive two-parent household. *Id.* ¶ 38. The defendant received a bachelor's degree and graduated magna cum laude. *Id.* ¶ 44, 53. The defendant does not suffer from any physical or mental health conditions, or substance abuse issues. *Id.* ¶¶ 50, 52. By all accounts he had every opportunity afforded to him in his young life, and his crimes were clearly not borne out of a troubled upbringing, the limitations that often attend a lack of education, or a struggle with substance abuse. His decision to engage in his criminal conduct is all the more baffling and inexplicable in light of those opportunities and advantages. Further, although this is the defendant's first criminal conviction, it is notable that his conduct was not a single failure of

4

judgment or momentary ethical lapse. As described above, the defendant's conduct involved repeated, deliberate decisions that he made over a period of several months and that required lucidity and deliberation.

In mitigation, and based on the Government's limited interactions with the defendant, the defendant appears truly remorseful for his actions. The defendant's acceptance of responsibility for his actions came quickly, and has been total and unwavering ever since. Additionally, he has been cooperative in the proceedings against him, to include engaging in a proffer session with the Government. The Government agrees that the defendant should be credited for his acceptance of responsibility, honesty, and willingness to assist to the best of his abilities. Further, the defendant reports being engaged in various activities to give back to his community, and seems committed to positively influencing the lives of others. The Government also credits how he has responded to these circumstances and turned the situation into an opportunity for personal growth. Overall, the defendant's history and characteristics—to include his productive actions, contributions to his community, and swift and unwavering acceptance of responsibility—favor a sentence that will in short order allow him to continue his good work in the community, and his educational and vocational journey.

3. <u>Affording Deterrence and Protecting the Public</u>

The Court's sentence should also further the aims of specific and general deterrence and protecting the public. U.S.S.G. § 3553(a)(2)(B), (C). The Government believes that the collateral consequences of a felony conviction alone will likely specifically deter the defendant from future criminal conduct, and thus ensure that the public is protected against future crimes of the defendant.

More importantly in this case, however, is the need for the Court to consider the sentencing aim of general deterrence. As Judge Garaufis recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, No. 16-CR-457-1 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). This is true, in part, because "[p]ersons who commit white-collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed." *Johnson*, 2018 WL 1997975 at *5; *see also Harmelin v. Michigan*, 501 U.S. 957, 988 (1991) ("since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"); *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (noting that "high sentences" were necessary to alter the calculus "that insider trading 'was a game worth playing'"). Indeed, "[t]he damage that could be done if it is perceived that fraudulent trading like spoofing is unlikely to result in a prison sentence is significant[, and] has the potential to change the risk/reward calculus substantially." *Vorley,* Tr. at 73. Thus, a substantial penalty is necessary to provide the appropriate disincentives to those contemplating similar crimes. *See e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized."). This is especially true when the potential rewards for would-be criminals who are

not caught can be substantial, and when such fraud is already extremely difficult to detect and successfully prosecute.

The defendant explains his conduct by saying he was a young and generally inexperienced trader, and felt tremendous pressure to perform and maintain his output; however, such a fact pattern is undoubtedly common, and many young traders on Wall Street likely experience such pressure on a daily basis. "Spoofing is but a species of market manipulation…[and t]he audience that learns of the sentence imposed in this case will be significantly broader" than those merely trading U.S. Treasuries securities. *Vorley,* Tr. at 74. Therefore, the defendant's sentence should take into account the need to deter other people—including young traders trying to make a name for themselves in a competitive industry—who may be tempted to commit similar crimes to try to get an edge. Thus, it is a particularly important aim of sentencing to deter those individuals who find themselves in similar positions from enriching themselves at the expense of the public and the integrity of our markets. They need to know that their criminal conduct will be caught and punished to the fullest extent under the law. A sentence containing some period of incarceration will send the message loud and clear, whereas a sentence of probation coupled with the collateral consequences of a conviction simply will not.

4. <u>Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment</u>

Finally, the Court's sentence should also reflect the seriousness of the offense, promote respect for the law, and provide just punishment. U.S.S.G. § 3553(a)(2)(A). There is little question that the defendant's criminal conduct was serious: although the victims in his case cannot be identified with specificity at this point given the anonymous nature of the trading platforms used, it is a fact that there *were* victims and that there *was* financial harm to others in this case. That there was harm is not theoretical. Moreover, as discussed above, the risk to the integrity of our markets has deleterious direct and indirect consequences. *See Zhao,* No. 18-cr-24, Sentencing Tr. at 28 (stating that because "so much of our economic welfare depends on capital markets and their efficient functioning…the economy suffers tremendously" when "people don't have confidence in the reliability of those markets). As such, the Government submits that a serious offense requires a serious sentence in order to promote respect for the law and provide just punishment.

5. <u>The Need to Protect Against Unwarranted Sentencing Disparities</u>

Finally, the Court must also fashion a sentence that avoids unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). In doing so, the Court may consider factors such as the relative pervasiveness and egregiousness of the spoofing conduct involved in other cases, versus the sentences imposed in those cases, in order to fashion a sentence that avoids unnecessary disparities. As discussed above, and based on such other cases involving spoofing conduct—to include those cited in the defendant's sentencing position, *see* ECF No. 15 at 17-20—this factor certainly militates in support of a downward variance from the defendant's calculated Guideline's range of 33 to 41 months' imprisonment. Further, as noted in the defendant's sentencing memorandum, defendants convicted for spoofing conduct have, in general, received below-Guidelines sentences; thus, based on this factor, and in

6

consideration of the other 3553(a) factors, the government respectfully submits that a below-Guidelines sentence would be appropriate in the defendant's case as well. *See United States v. Sampson*, 898 F.3d 287, 314 (2d Cir. 2018) ("Indeed, the primary purpose of § 3553(a)(6) is to reduce unwarranted sentencing disparities on a *nationwide* level.") (emphasis in original and internal citations omitted).

IV. Restitution and Forfeiture

The United States is unable at this time to calculate with precision losses to identifiable victims. Given the nature of the defendant's offense, which involved numerous orders submitted on anonymous U.S. Treasury securities trading platforms, in this matter determining complex issues of fact related to the cause or amount of any victim's losses, if possible, would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process and the imposition of significant costs to the government. As such, the parties would ask the Court to find that 18 U.S.C. § 3663A(c)(3)(B) applies to this case.

V. Conclusion

For all the reasons articulated above, the United States respectfully submits that a sentence with some term of incarceration is sufficient but not greater than necessary to achieve the goals of sentencing. As to the specific term of incarceration, the government respectfully defers to the Court.

Respectfully submitted,

LORINDA I. LARYEA
Acting Chief, Fraud Section
Department of Justice, Criminal Division

By:   \_\_\_\_\_/s/_____
Sara Hallmark
Trial Attorney
Avi Perry
Deputy Chief

cc:   Richard Weinstein, Esq. (counsel to defendant) (by email and ECF)
      U.S.P.O. Houlton (by email and ECF)
      Clerk of the Court (by ECF)